UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CYNDI M. B.,<br><br>       Plaintiff,<br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 8:23-cv-00250-BFM<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    PROCEDURAL HISTORY

On July 31, 2020, Plaintiff Cyndi M. B.[1] applied for a period of disability and disability insurance benefits and for Supplemental Security Income payments, alleging a physical disability that commenced on October 31, 2016. (Administrative Record ("AR") 268-74, 275-84.) Plaintiff's applications were denied at the initial level of review and on reconsideration, after which she requested a hearing in front of an Administrative Law Judge. (AR 21, 153-54,

---

[1] In the interest of privacy, this Memorandum Opinion and Order uses only the first name and middle and last initials of the non-governmental party in this case.

155-60, 161-63).) The ALJ held a hearing on January 27, 2022, and heard from Plaintiff and a vocational expert. (AR 65-68.) After that hearing, the ALJ issued an unfavorable decision. (AR 21-34.) The ALJ found at step two of the disability analysis[2] that Plaintiff had several severe impairments: diabetes; degenerative disc disease with residuals of surgery; degenerative joint disease of bilateral shoulders; trigger finger of left thumb and ring finger; and obesity. (AR 24.) At step three, the ALJ concluded that those conditions did not meet or medically equal the severity of any impairment contained in the regulation's Listing of Impairments—impairments that the agency has deemed so severe as to preclude all substantial gainful activity and require a grant of disability benefits. (AR 26); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

Because Plaintiff's impairments were not severe enough to require a grant of benefits at step three, the ALJ proceeded to consider at step four whether Plaintiff's residual functional capacity—what Plaintiff could do despite her limitations—was such that she could perform her prior work. (AR 32.) The ALJ concluded that Plaintiff could do sedentary work with certain limitations. (AR 27.) In formulating the statement of Plaintiff's residual functional capacity, the ALJ rejected much of Plaintiff's own testimony about the effect her conditions had on her daily life (AR 31); that portion of the ALJ's decision is described in more detail below, because it is the crux of this case.

Having assessed Plaintiff's residual functional capacity, the ALJ then credited the vocational expert's testimony that an individual with Plaintiff's limitations would be able to perform her prior work as a telemarketer and administrative assistant. (AR 32.) In the alternative, again relying on the

---

[2] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

1 vocational expert's testimony, the ALJ concluded that Plaintiff could perform
2 the requirements of several representative unskilled, sedentary occupations.
3 (AR 33). The ALJ thus found Plaintiff to be not disabled and denied her claims.
4 (AR 33-34.) The Appeals Council denied review of the ALJ's decision. (AR 1-5.)

Dissatisfied with the agency's resolution of her claim, Plaintiff filed a Complaint in this Court. Her sole argument here is that the ALJ erred when he rejected Plaintiff's subjective symptom testimony. (Pl.'s Br. at 6-7.) Defendant requests that the ALJ's decision be affirmed.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

## III. DISCUSSION

The only question this case presents is whether the ALJ provided a

3

specific, clear, and convincing reason to reject Plaintiff's testimony describing her pain and functional limitations. For the reasons set forth below, the Court concludes he did not and that the ALJ's decision must be reversed.

### A. Legal framework

Where a claimant testifies about her own medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted). The ALJ here determined that Plaintiff met that standard. (AR 31.)

Where claimant meets that first standard and there is no evidence of malingering—and there was none found here—the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Lingenfelter,* 504 F.3d at 1036 (citation and internal quotation marks omitted). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the same time, when an ALJ rejects a claimant's testimony, he must "specify which testimony he finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin,* 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit findings of credibility will not suffice; the ALJ "must show his work." *Smartt,* 53 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1102 (9th Cir. 2014).

The sufficiency of the explanation should be judged in light of its purpose—ensuring that this Court's review is "meaningful." *Brown-Hunter,* 806

4

F.3d at 489. That is, the explanation must be "'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* at 493 (citation omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

**B.    The ALJ's Order**

In this case, the ALJ started with a summary of Plaintiff's testimony at the hearing: Plaintiff testified that her April 2019 back surgery "left her worse off" than she had been before. After her surgery she continues to require injections to relieve her back and shoulder pain and the stiffness in her trigger finger, and she also ices and heats her back. She takes narcotics to manage her pain, medications that makes her sleepy and confused. Plaintiff has begun to experience peripheral neuropathy in her feet as a result of her diabetes; her diabetes has been more difficult to control in the past few years. (AR 28.)

In terms of the effect of these conditions on her daily life, Plaintiff testified that she finds it difficult to walk or stand, and has to change positions frequently to relieve her pain. She can only stand or walk for about 15 minutes at a time. Plaintiff lives with her son, and relies on him. She is able to use the bathroom and to shower, but her son helps her wash her hair. She can dress herself, though putting on undergarments can be difficult. Plaintiff prepares simple meals for herself but does no other chores. She spends most of her time watching television. She is able to drive and shop in stores, but usually goes with her son. She relies on him to manage most of the household tasks. (AR 28.)

The ALJ then summarized various of Plaintiff's pre- and post-surgical medical records. (AR 28-30.) Having done so, he returned to Plaintiff's

1 testimony. The ALJ concluded that Plaintiff's statements about the "intensity,
2 persistence and limiting effects" of her symptoms are "not entirely consistent"
3 with the medical evidence in the record "for the reasons explained in this
4 decision." (AR 31.) Physical exams did not reflect the degree of limitation she
5 had alleged; for example, the ALJ noted, despite her claims of severe back pain,
6 she had regularly been observed as having a normal gait during medical
7 examinations. She is able to prepare simple meals, drive, and shop in stores.
8 She was able to complete the Pain Questionnaire and Asthma Questionnaire,
9 and "as such," has "demonstrated that she could do other work at the sedentary
10 exertional level" with the limitations described in the residual functional
11 capacity. (AR 31.) In sum, the ALJ concluded, while the Plaintiff might not be
12 capable of a "highly physical job," she was not as limited as her testimony might
13 suggest.

14 **C. Analysis**

15 The ALJ rejected Plaintiff's testimony without giving an adequate reason
16 for doing so. He summarized Plaintiff's testimony, summarized the medical
17 findings in the case, and then connected the two summaries with the conclusion
18 that Plaintiff's statements "are not entirely consistent with the medical evidence
19 and other evidence in the record for the reasons explained in this decision." (AR
20 31.) That conclusion, by itself, is not enough because it fails to link specific
21 portions of the record evidence to specific portions of Plaintiff's testimony and
22 describe how one undermined the other. *Brown-Hunter*, 806 F.3d at 494.

23 From there, the ALJ made a few more specific findings of purported
24 inconsistencies—but nothing that constitutes a specific, clear, and convincing
25 reason, supported by substantial evidence, for rejecting Plaintiff's testimony.

26 **1. Inconsistency with Objective Medical and Other Evidence**
27 An ALJ evaluating a claimant's testimony is allowed to consider whether
28

6

her testimony is consistent with the broader medical record. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in his credibility analysis."). But, when an ALJ uses the medical record as a basis to disregard a claimant's testimony, he must point to specific things in the medical records and describe *how* they contradict the claimant's testimony, and that explanation must be supported by substantial evidence. *Brown-Hunter*, 806 F.3d at 494. An ALJ's conclusions about the differences between of Plaintiff's testimony and broader medical record does not meet that standard.

Here, the ALJ found that "physical exams and scans have not shown the degree of limitations [Plaintiff] has alleged." (AR 31.) As an example—as the *only* example—the ALJ noted that, while the scans "certainly" showed degenerative changes in the lower back, Plaintiff's allegations of severe lower back pain are nevertheless inconsistent with her medical practitioner's observations of her "normal gait without the use of an assistive device." (AR 31 (citations omitted).) But the ALJ does not explain, and it is not evident, how observation of a normal gait on examination (e.g., when asked to walk across the examination room) is inconsistent with Plaintiff's claims about the severity of her lower back pain—or how that one finding warranted rejecting the entirety of Plaintiff's testimony. Plaintiff never claimed she could not walk; she said she could not stand or walk for more than 15 minutes at a time. Walking across a room and walking for an extended period of time are different skills, and it is not apparent that the ability to do one casts doubt on the claimed inability to do the other. If the ALJ believed they were inconsistent, he needed to say more.

Apart from that misguided example, the ALJ does not explain how the broader medical record undermines Plaintiff's testimony. In fact, elsewhere in

1  the ALJ's decision, he describes the significant treatment Plaintiff received even
2  *after* her April 2019 surgery. He noted that two months after surgery, in June
3  2019, Plaintiff started reporting pain radiating into her upper back, buttocks,
4  and groin and she was referred to pain management for possible injection
5  treatment. (AR 28.) In July 2019 she reported she had not received any relief
6  from either the surgery or her post-operative physical therapy. More scans were
7  ordered, and they revealed some residual stenosis. In September 2019, Plaintiff
8  was "offered a revision surgical option that included a lumbar fusion," but she
9  "elected to continue to manage the pain with injections and [narcotic] pain
10 medications." (AR 29.) Then, in October 2019, she received nerve block
11 treatment and in December 2019, she received a medial branch block. In 2020,
12 Plaintiff continued to complain of constant, moderate pain, and was referred
13 again for injection treatments. Additionally, "throughout 2019, 2020, and 2021,
14 [Plaintiff] continued to rely heavily on pain medication to manage her pain."
15 (AR 29-30 (citations omitted).) The ALJ did not explain how this (or any other)
16 evidence in the medical record cast doubt on Plaintiff's subjective symptom
17 testimony and the Court does not see how it does.
18      In short, the ALJ's determination that the medical record undermined
19 Plaintiff's subjective symptom testimony was not a specific, clear, and
20 convincing reason supported by substantial evidence.
21      **2.    Inconsistency with Daily Activities**
22      As second reason to discount Plaintiff's testimony, the ALJ pointed to
23 Plaintiff's ability to prepare simple meals, drive, and shop in stores and deemed
24 them inconsistent with her testimony about the severity of her impairments.
25 (AR 31.) This characterization does not capture the limits to which Plaintiff
26 testified.
27      For instance, Plaintiff did not say she could "prepare simple meals"; she
28

8

1 stated that if something is "very easy" to make, she can put it in the microwave.
2 She said she could stand long enough to cook a scrambled egg, "but a lot of times,
3 my son cooks for me." (AR 56-57.) Plaintiff did not say she drives; she said she
4 can drive a "very, very short distance." The liquor store across the street is the
5 furthest she will drive. (AR 58.) Similarly, she does not "shop in stores"; she
6 shops at the grocery store maybe once a week for about 15 minutes, but "[m]ost
7 of the time, with [her] son." (AR 57.) These are significant differences that
8 undermine the persuasive value of the ALJ's reasoning.

9 Setting aside whether the ALJ properly characterized Plaintiff's
10 testimony, the activities he pointed to do not provide a clear and convincing
11 reason to reject Plaintiff's testimony. It is true that where a claimant engages
12 in "daily activities that are incompatible with the severity of symptoms alleged,"
13 that can be a basis to discount subjective symptom testimony. *Trevizo v.*
14 *Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citing *Ghanim v. Colvin*, 763 F.3d
15 1154, 1165 (9th Cir. 2014)). But a claimant need not be "utterly incapacitated"
16 to receive benefits. ALJs must be mindful of the difference between activities at
17 home and the requirements of work—a place "where it might be impossible to
18 periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.
19 1989) (internal citations omitted).[3] Indeed, the Ninth Circuit has "repeatedly
20 asserted that the mere fact that a claimant has carried on certain daily
21 activities, such as grocery shopping, driving a car, or limited walking for
22 exercise, does not in any way detract from her credibility as to her overall

---

[3] "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (citations omitted) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

1 disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted). But the ALJ violated that rule here, without explaining how those activities are incompatible with the severity of symptoms or limitations alleged by Plaintiff.

Perhaps most troubling, the ALJ noted Plaintiff was able to complete (in handwriting) the 3-page Pain Questionnaire (AR 335-37) and the 2-page Asthma Questionnaire (AR 338-39) and "*as such*" has "demonstrated that she could do other work at the sedentary exertional level within the limitations included in the residual functional capacity." (AR 31 (emphasis added).) The ALJ does not explain how filling in the blanks on two short and uninvolved forms supports the conclusion that Plaintiff is able to complete an 8-hour workday, 5 days a week. The ALJ did not ask Plaintiff how long it took her to complete those forms, whether she completed them at one sitting, or whether she alternated sitting and standing when she filled them out. And even if Plaintiff sat and filled them out in one sitting, the exertion required to fill out brief forms is not comparable to the exertion required to work full time.

Simply put, none of the ALJ's reasons for rejecting Plaintiff's testimony are clear and convincing and supported by substantial evidence.

## IV. REMAND FOR FURTHER PROCEEDINGS

Remand is appropriate, as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1101, n.5 (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"). The error here is not necessarily that

Plaintiff's credibility was beyond all possible dispute; it is that none of the ALJ's reasons for rejecting Plaintiff's testimony are persuasive. But it is not for this Court to judge credibility in the first instance. *Brown-Hunter*, 806 F.3d at 494 ("the credibility determination is exclusively the ALJ's to make, and ours only to review"). Accordingly, remand is appropriate. *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## V. CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: August 4, 2023

_____
BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE